We'll move on to the next case of the day. Hinds v. Commissioner Saul, No. 19-1867. And we'll hear from Mr. Sloan. May it please the Court, my name is Stephen Sloan and I represent Appellant Troy Hinds. This case regards the medical opinion of an internal medicine specialist whose conclusions were supported by the results of a detailed functional capacity evaluation as well as a review of the complete medical record at that time. The administrative law judge discounted this opinion upon the basis of a factual misrepresentation of the record and instead uncritically accepted the findings of stale state agency reviewers of no particular specialty who did not examine the claimant. In doing so, the ALJ did not properly address the factors that she was required to consider by the regulations and her discussion of these contrasting opinions does not illustrate a decision based upon substantial evidence. The substantial evidence standards cannot be satisfied when it's supported by false statements regarding critical evidence because it does not build the logical bridge from the evidence to the conclusion, which is a long-established requirement of this Court. In this case, the ALJ has offered at least two blatant misrepresentations of the evidence in support of her decision. Counsel, I don't mean to quibble. When I hear the word misrepresentation, I infer intentional misrepresentation. Is that what you're claiming here? I don't believe intentional here. I think that... ALJs are pretty busy folks. You've got a lot of high caseload, right? Absolutely. I think in this case, the first misrepresentation was the ALJ stating that the functional capacity assessment was based on... appeared to be based on completely reliant upon the claimant's subjective complaints. The ALJ provides no support for this statement whatsoever. The functional capacity evaluation that she's addressing actually contains a large amount of objective findings, clinical findings, and observations. And to the extent that it does address subjective complaints also, that would be true of essentially every single functional capacity evaluation. And indeed, true of almost every single medical visit that any claimant would attend. Can I ask you a question about that? Because I actually wasn't sure that there was an inaccuracy there. And here's... I might be talking about a different piece of evidence, so you can correct me. In the record, there's this document, a questionnaire called a lumbar spine RFC. Lumbar spine RFC. Is that the piece of evidence you're talking about? No, Your Honor. That is the opinion by the primary care physician, Dr. Holly Dallas. And she refers to the functional capacity evaluation in that assessment, which is later in the record. So what piece of evidence... What point were you making? Or what piece of evidence were you talking about? So the functional capacity evaluation... When Dr. Holly Dallas, who is Mr. Hines' treating opinion or treating physician, was asked to fill out a form, instead of just filling it out based upon his subjective complaints, she actually sent him out to a physical therapist for a functional capacity evaluation. This was performed by a physical therapist, Tiffany Dela Cruz. And unfortunately, I do not have the citation right here in front of me, but it is indicated in the brief. And that included a large amount of abnormal findings, including limited range of motion testing in the spine, decreased gait cadence and use of a cane, an observed stance that shifted to the left, observations of a dragging right foot, as well as a large amount of scar tissue in his back, and many more objective findings. The judge simply said that this was based upon subjective complaints and discounting it, and then cited to a single exhibit as contrasting with it. The difficulty with this citation is that it's a citation to a single visit for a migraine headache, something that the judge does not find to be a severe impairment here. I think context is pretty important when we're looking at the evidence and whether it supports an opinion or not. And in this case, my wife suffers from migraines. I have yet to go with her to the Diamond Headache Clinic and have them perform range of motion testing or anything like this. So I think normal findings in that context are incredibly unpersuasive. Now, this court in Barrett v. Barnhart addresses almost this exact scenario, saying that it was arbitrary when the AOJ dismissed the complaints, the physical therapist findings, because it was based on subjective complaints. And in this case, I think Dr. Dallas does exactly what you would hope that a treating physician does in this case. Instead of simply taking the subjective statements of the claimant, she did send him out to a functional capacity evaluation. Counsel, is it correct that the plaintiff, Mr. Hines, testified that he was not doing anything to try to get better? I think it's somewhat true. I think at this point, it's a combination of, I think that was a little confusing at the hearing, because I think, unfortunately, Mr. Hines is very afraid of both surgery and injections. And I think at that time, one of the things he said was he was trying to seek disability benefits so he'd have more access to medical care and be able to seek a wider variety of care. I would also note that he has undergone physical therapy, chiropractics, electrotherapy, as well as the use of narcotic pain medications in the record. Well, I don't mean to be flip about this, but if the normally effective treatments of his conditions involve surgery and injections, I can understand he may not be eager to do that. But he is also seeking taxpayer-supported benefits to support that preference not to take steps that most folks would think might make him better. And I think in this case, while there is a reference to injections being offered, he does reference, and this is true, I think, generally as well, that oftentimes the injections are a short-term solution for a problem. As far as the surgery, there was no discussion of the surgery at all, and the judge doesn't really address why there should be in this case. He doesn't just have a back problem. He has several different, more complicated problems, as well as being an obese individual of 345 pounds, which often contraindicates surgery. Ultimately, the judge doesn't really delve into any of that in her discussion of the evidence. She simply says that she cites conservative treatment without any exploration of that, which is something that this court has criticized consistently in the past. And I would note that in making all these judgments, the judge is doing this with a year and a half of medical evidence that no medical opinion supports her opinion in this regard. The state agency reviewers were far prior to Dr. Dallas's opinion, and these were opinions by a gastroenterologist and an obstetrician who did not examine Mr. Hines and were without those extensive records. All the factors outlined in 404.1527, every single one of those supports Dr. Dallas's opinion over those of the state agencies. And I think these errors, the main crux of this case, I think, is the judge's decision to take that state agency opinion, give it great weight, while dismissing the treating opinion that is based upon functional capacity evaluation. Now, I do think that something like conservative treatment certainly doesn't overcome that failure to address those factors. I think Barrett v. Barnhart speaks to that as well, because they acknowledge that essentially the judge's, it was a credibility analysis at that time, it's not called that anymore, but that that was relatively well supported. Nevertheless, they found that that error supported remand in that case. And I would like to reserve the rest of my time for rebuttal. All right. Thank you very much. Mr. Maggio. Good morning, Your Honors. May it please the Court, Megan Hugo on behalf of the Commissioner. I'm sorry, did I get your name wrong? Yes. I was looking ahead, Ms. Hugo, I apologize. There is no doubt that Mr. Hines has severe impairments that cause pain and other limitations. The ALJ didn't ignore evidence establishing limitations. She accommodated them with a very restrictive residual functional capacity assessment that allowed Mr. Hines, among other things, to sit for six hours per day, change positions every 30 to 45 minutes, and stretch at the workstation and use his cane. The ALJ also didn't make any false statements in this case. There was some imprecise language used, perhaps, but drafting errors are not enough to warrant remand in this case. The ALJ's assessment is supported by the opinions of the state agency doctors and other substantial evidence, and the Court should affirm it. With respect to the medical opinions, first, with respect to Dr. Dallas, the treating physician who offered the lumbar spine questionnaire, the ALJ gave several reasons why she didn't find Dr. Dallas's opinion persuasive. First, that it wasn't consistent with the evidence as a whole. The ALJ pointed specifically to Dr. Dallas's examination from just four months prior to the opinion, which showed normal gait and station, normal range of motion, and Hines said his low back wasn't bothering him too much right now. Now, counsel tries to minimize the significance of that record by saying that his condition fluctuated, and it's true that his condition fluctuated. There are notations in the record where he had an antalgic gait, he used a cane, and he did have reduced range of motion in his lumbar spine. But the ALJ had to compare Dr. Dallas's opinion with her treatment records, and here there's only one treatment record to compare the opinion to. The ALJ reasonably found that since that one note didn't support her opinion, that was one reason to give it reduced weight. The ALJ also discussed other evidence throughout the record that contradicted Dr. Dallas's opinion. Just for example, she gave great weight to the opinions of the state agency doctors, Dr. Owen Smith, who in contrast to Dr. Dallas, found that Mr. Hines could sit for six hours, stand and walk for two hours, lift 20 pounds occasionally, and 10 pounds frequently. On the other hand, Dr. Dallas says he couldn't even lift 10 pounds, he couldn't even sit for two hours, he couldn't even stand for two hours. That's an obvious conflict that the ALJ was entitled to take into account. The ALJ also considered that examinations consistently showed normal sensation and no significant muscle weakness, which were objective signs that Dr. Dallas listed in her report as supporting her opinion. In addition to the medical evidence, the ALJ also considered the treatment relationship. She said that Dr. Dallas only treated Hines four times, which was actually overly generous because it appears that she only examined him once. But the fact that they had a limited treatment relationship at the time of the opinion was another factor that the regulations say the ALJ was entitled to consider in writing the opinion. And finally, the ALJ did say that the functional capacity evaluation was completely reliant on Hines' complaints, which is an overstatement. The ALJ discussed that the physical therapist performed objective testing and discussed the results of that testing. But the fact remains that the evaluation was based in part on his subjective complaints, and in particular, two of the most important limitations for social security disability evaluation, his ability to sit and stand, appear to have been taken directly from his reports to the physical therapist and then adopted by Dr. Dallas. So the case Barrett, I think, has been read too broadly by counsel. In that case, the ALJ appears to have rejected an evaluation based solely on the fact that it was based on the claimant's subjective complaints, and the court found that to be arbitrary because the therapist actually did perform testing. But in this case, this wasn't the only reason the ALJ gave. The ALJ also found that Dr. Dallas' opinion wasn't consistent with the rest of the evidence and also wasn't consistent with the limited treatment relationship. So in cases like that where the ALJ is not solely relying on subjective complaints, the court has found that an ALJ can discount an opinion where it's based partly on subjective complaints, and the ALJ reasonably did that here. With respect to the state agency doctors, it's always the case that evidence is going to be added to the record after the state doctor's review because of just how the social security disability process works. But the evidence that is pointed to in the reply briefing of the argument is not sufficient to show that there's any probability that the doctor's opinions would have changed or that the ALJ's decision would have changed. For example, with respect to Dr. Dallas' opinion, which Mr. Sloan mentioned in the functional capacity evaluation, the ALJ thoroughly evaluated that and explained why it wasn't persuasive. But also, the state agency doctors had many physical examinations at their disposal that showed somewhat similar findings. They had the consultative exam from Dr. Taiwo that showed he had an antalgic gait, he used his cane, he had limited range of motion in his hips and spine. So this isn't a case where there is something new that the state doctors weren't able to look at. They already had imaging, they already had evaluations that they could look at. So none of this evidence is sufficient to show that their opinions were outdated. The ALJ also reasonably evaluated his subjective complaints. Which also goes to the rationale for discounting the physical therapy evaluation because if it's based on subjective complaints that aren't supported by the record, it makes it a little bit less persuasive. ALJ considered the medical evidence, his treatment history, including that he refused to get injections. And that was a big sticking point for the ALJ in the decision. And at the hearing, they had a long discussion about why Mr. Hines didn't want to get the injections. He didn't say he was afraid of needles, which is a common thing. He just said he didn't think his doctors were skilled enough to administer injections to his spine. And the regulations specifically say that if a claimant doesn't pursue recommended treatment, the ALJ is allowed to hold that against the claimant as long as ALJ considers and addresses possible reasons. And the ALJ did that here sufficiently. And in this case, there was no apparent problem with respect to insurance coverage? Or he didn't check? He made it very clear that he was not getting injections due to risk, not cost. He mentioned at the hearing, you know, injections would be expensive. And the ALJ circled back and said, but that's not what you told me. You said you weren't getting it because of risk. And he said yes. And the injections weren't just recommended one time. They were recommended consistently while he was getting medical treatment. So it doesn't appear that, you know, finances had any reason to do with the injections. And finally, with respect to Hines' headaches, the ALJ found that Mr. Hines did not have a medically determinable impairment of migraines because Dr. Dallas had interpreted an MRI report as showing that the headaches could have been caused by sinusitis, which may have been amenable to treatment with medication. That paints somewhat of an incomplete picture of the limited evidence that there is in the record after his onset date regarding his headaches. But even if the ALJ erred in finding the headaches not medically determinable, it should be considered harmless because Mr. Hines hasn't shown any functional limitations that result from those headaches. You know, significantly, there's no medical opinion in the record. Dr. Dallas was willing to submit the lumbar spine questionnaire but didn't submit anything about headache limitations, even though she was treating him for that problem. Mr. Hines didn't testify to limitations from his headaches. He said he got them two to three times per week. He was only taking Aleve. He wasn't even taking prescription medications. And he said the Aleve sometimes worked, sometimes didn't.  And not to be flippant, but pain that a person can tolerate that's not accompanied by other functional limitations is not disabling. Plain if it's cited to this court's prior cases and more, for example, to show the kind of evidence that would be sufficient to establish limitations from migraines. And it's a nice contrast to this case because none of the factors in those cases were present here. And more, for example, the claimant testified she stayed in bed most of the day, she had nausea, she enrolled in a headache study at a university, she had surgery to implant a nerve simulator in her head, and her treating doctor submitted an opinion that her headaches were disabling. In contrast here, we have no medical opinion, and Mr. Hines isn't even taking prescription medications. He specifically denied photophobia to Dr. Dallas. There's really just a dearth of evidence in the record that the headaches cause any functional limitations. So, on the record, any error in the ALJ's evaluation of the headache should be considered harmless. Unless the court has any further questions, I would ask for the reasons in the brief that you affirm. Thank you, Ms. Schucco. Any rebuttal?  Yes, Your Honor. First, I'd like to take issue with opposing counsel stated that these were merely drafting errors, the false statements, but she talks about them as being sort of these broader sort of ideas. But I think in this case, one of the things that was specifically relied upon by the lower court was the fact that the judge stated that the state agency opinions were uncontradicted. And the judge doesn't just say this once. The judge says it on two separate occasions. And I think the important part here is this is not harmless because, well, not only did the court rely upon this, but without that rationale, there's really a dearth of anything supporting giving greater weight to that state agency opinion. And while opposing counsel talks about the judge citing to normal findings, the judge cites to two occasions, and they're both migraine visits. In a record as large as this, there's normal and abnormal findings, as one would expect with any record that's this long. This court has constantly criticized cherry picking. I think that's very clear in this case. And ultimately, if there were significant records that showed normal findings on a consistent basis, then one would expect the judge to be able to cite to more than one, and one that's in the context of a migraine visit. And I would also indicate just briefly that counsel is representing 16-3P, the subjective complaints analysis. And something that's been mentioned a couple times in court today has been the patently flawed standard. And I do believe that that standard is no longer applicable. I do see that I am out of time. Well, why don't you tell us what the right standard is then? I believe the standard should be the standard that's exactly outlined in 16-3P, which is to clearly articulate the factors that were considered under the regulations. There's nothing about taking a personally examining, you know, the judge's superior position to personally examine or see someone who's testifying. That's not a factor outlined in 16-3P. That's under the old credibility analysis, and so that's what patently wrong standard is premised on. And so I do believe that that is not an applicable standard anymore. Okay. And with that being said, I would ask that this court remain. All right. Thanks to both counsel. The case is taken under advisement.